IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MULTIBANK 2009-1 RES-ADC
VENTURE, LLC, a Delaware
corporation

       Plaintiff,

v.

PINECREST AT NESKOWIN, LLC;
MICHAEL D. FREEMAN; MELANIE S.
FREEMAN; UNIT OWNERS
ASSOCIATION OF PINECREST,

       Defendants.

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
Silver Falls Bank,

       Third-Party Defendant.

3:11-CV-853-BR

OPINION AND ORDER

**GARY L. BLACKLIDGE**
**DANIEL L. STEINBERG**
Greene & Markley, PC
1515 S.W. Fifth Avenue, Suite 600
Portland, OR 97201
(503) 295-2668

**MICHAEL A. GEHRET**
Snell & Wilmer, LLP
15 W. South Temple, Suite 1200
Salt Lake City, UT 84101
(801) 257-1900

        Attorneys for Plaintiff

**KEVIN J. JACOBY**
**PAUL R. J. CONNOLLY**
Law Office of Paul R.J. Connolly, PC
P.O. Box 3095
Salem, OR 97302
(503) 585-2054

        Attorneys for Defendants

**WILLIAM A. DREW**
**JOEL P. LEONARD**
**JOHN D. OSTRANDER**
Elliott Ostrander Preston, PC
707 S.W. Washington Street, Suite 1500
Portland, OR 97205
(503) 224-3461

        Attorneys for Third-Party Defendant

**BROWN, Judge.**

This matter comes before the Court on the Motion (#35) for Leave to File First Amended Answer and Third Amended Affirmative Defenses by Defendants Melanie S. Freeman, Michael D. Freeman, PineCrest at Neskowin, and Unit Owners Association of Pinecrest. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

2 - OPINION AND ORDER

**FACTUAL BACKGROUND**

The following facts are drawn from the allegations set out in Plaintiff's Complaint.

Plaintiff Multibank brings this action against Defendants for foreclosure of Trust Deed and against Defendants Melanie S. and Michael D. Freeman (the Freemans) for Breach of Guaranty.

In October 2006 Silver Falls Bank loaned Defendant PineCrest $2.5 million, and PineCrest executed and delivered to Silver Falls Bank a Promissory Note for the same amount and a Trust Deed for the property located at 48790 Breakers Boulevard, Neskowin, Oregon 97149. The terms of the Note were subsequently amended in November 2007 as reflected in a Change in Terms Agreement.

In February 2009 Silver Falls Bank was declared insolvent, and Third-Party Defendant Federal Deposit Insurance Corporation (FDIC) was appointed as receiver of the bank. Plaintiff alleges FDIC sold and assigned the Note and Trust Deed to Plaintiff, which Plaintiff now seeks to enforce. Plaintiff alleges Defendant PineCrest is in default under the terms of the Note and Trust Deed for failure to pay the Note in full on its maturity date of October 18, 2008. Plaintiff also alleges the Freemans breached the Commercial Guaranties they each executed and delivered to Plaintiff. Plaintiff alleges Defendants owe approximately $2.4 million on the Note.

Plaintiff seeks, *inter alia*, a foreclosure of the subject

3 - OPINION AND ORDER

property pursuant to the Trust Deed and a judgment entered against Defendant PineCrest on the Note for the principal sum of the loan plus interest and also against the Freemans for the principal sum of the loan plus interest.  Plaintiff also seeks attorneys' fees and costs.

## PROCEDURAL BACKGROUND

On July 2, 2010, Plaintiff filed this action against Defendants in Tillamook County Circuit Court.

On July 15, 2010, FDIC and Plaintiff jointly filed a motion in Tillamook County Circuit Court for mandatory joinder of FDIC as a party to the case.  FDIC asserted, as the receiver of Silver Falls Bank, FDIC sold the assets of Silver Falls Bank (including the Note and Trust Deed at issue) to Plaintiff while FDIC retained Silver Falls Bank's liabilities.  Thus, FDIC contends it is liable for any wrongdoing by Silver Falls Bank related to the underlying loan transaction, but Plaintiff is the proper beneficiary of the Note and Trust Deed as the purchaser of that asset.  While the joinder motion was pending in state court Defendants filed an Answer to Plaintiff's Complaint on or about August 12, 2010, and Defendants filed their Amended Affirmative Defenses and Counterclaims on approximately October 18, 2010.

On or about February 15, 2011, Defendants filed an Amended Answer and Second Amended Affirmative Defenses and Counterclaims

4 - OPINION AND ORDER

in which Defendants asserted a number of affirmative defenses:
(1) Plaintiff failed to state a claim; (2) Plaintiff is not the
real party in interest under the loan documents; (3) Silver Falls
Bank failed to disclose material facts to Defendants, which
constitutes a breach of contract and excuses Defendants'
nonperformance; (4) Silver Falls Bank breached the agreement with
Defendants to modify the terms of the Note and loan agreement;
(5) Silver Falls Bank breached the loan agreement by failing to
timely and fully fund the loan; (6) unclean hands; and (7) Silver
Falls Bank violated the Equal Credit Opportunity Act.  On many of
the same facts that provide the basis for their Affirmative
Defenses, Defendants also asserted Counterclaims against
Plaintiff that implicate the actions of Silver Falls Bank.

On July 15, 2011, after briefing and oral argument, the
Tillamook County Circuit Court granted the joint motion by
Plaintiff and FDIC for mandatory joinder of FDIC as a
Counterclaim Defendant and Third-Party Defendant.

FDIC then removed the matter to this Court on July 15, 2011.

Before FDIC filed any responsive pleading in this Court,
Defendants filed on July 20, 2011, a Rule 41(a) dismissal of any
and all of their claims against FDIC.  Later that day FDIC filed
its Answer to Defendants' Counterclaims and Affirmative Defenses.
On July 26, 2011, Defendants filed a Motion to Remand this matter
to state court based in large part on Defendants' attempted

voluntary dismissal of FDIC.  On October 25, 2011, the Court held

a hearing on these matters and issued the following Order (#32):

> For the reasons stated on the record, the
> Court construes Defendants Notice of
> Dismissal under Federal Rule of Civil
> Procedure 41(a)(1)(A)(I) as clarifying that
> Defendants do not intend to assert any
> affirmative relief against FDIC and as
> dismissing only those claims or defenses
> Defendants raised against Federal Deposit
> Insurance Corporation by implication or
> operation of law.  Because Defendants
> expressly preserve each of their previously
> raised claims and defenses as against
> Plaintiff Multibank, which implicate Silver
> Falls Bank for whom the FDIC is the receiver
> and served as the basis for the Circuit Court
> of Tillamook County's ruling that FDIC is a
> necessary party to this action, the Court
> concludes Defendants Notice of Dismissal
> cannot circumvent FDIC's status as a
> necessary party or, to that extent, to
> dismiss FDIC. Accordingly, FDIC will remain a
> necessary party in this matter as long as
> Defendants assert claims and/or defenses that
> implicate the liability of Silver Falls Bank
> for which FDIC has statutory liability.
> Based on this ruling, Defendants conceded at
> oral argument that the removal by FDIC to
> this Court was proper and that the Motion for
> Remand should be denied.  Accordingly, the
> Court acknowledges Defendants Notice [4] of
> Dismissal as stated here and on the record
> and DENIES Defendants Motion [10] to Remand.
> Defendants shall file no later than November
> 8, 2011, their Motion for Leave to File an
> Amended Answer and Counterclaims along with a
> form of the proposed Amended Answer and
> Counterclaims.

Accordingly, on November 8, 2011, Defendants filed their

Motion (#35) for Leave to File First Amended Answer and Third

Amended Affirmative Defenses.  After briefing by the parties, the

Court heard argument on November 21, 2011.  The Court directed
Defendants to file a Supplemental Statement regarding the Motion
to Amend.  The Court notes neither Plaintiff nor FDIC chose to
file any response to Defendants' Supplemental Statement (#41).


## <u>STANDARDS</u>

Federal Rule of Civil Procedure 15(a) provides a party may
amend a pleading after a responsive pleading has been filed only
by leave of court unless the opposing party consents to the
amendment.  Rule 15(a), however, also provides leave to amend
"shall be freely given when justice so requires."  This policy is
to be applied with "extreme liberality."  *Moss v. United States
Secret Svc.*, 572 F.3d 962, 972 (9th Cir. 2009).

The Supreme Court has recognized several factors that a
district court should consider when determining whether justice
requires the court to grant leave to amend.  Those factors
include

> undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to
> cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing
> party by virtue of allowance of the
> amendment, futility of the amendment.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th
Cir. 2003)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
The factor that carries the greatest weight is whether the
amendment will cause the opposing party prejudice.  *Id*.  "Absent

7 - OPINION AND ORDER

prejudice or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* "Delay alone, no matter how lengthy is an insufficient ground for denial of leave to amend." *Jones v.* Bates, 127 F.3e 839, 847 n.8 (9th Cir. 1997)(citing United *States v. Webb,* 655 F.2d 977, 980 (9th Cir. 1981)). *See also Quantum Tech. Partners II, L.P. v. Altman Browning and Co.,* No. 08-CV-376-BR, 2009 WL 1795574, at \*19 (D. Or. June 23, 2009) (same). The party who opposes amendment bears the burden to show prejudice. *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

## <u>DISCUSSION</u>

Although there was significant litigation of this matter while it was pending in Tillamook County Circuit Court, including some dispositive motion practice, this Court has not been fully apprised of those issues. In addition, the Court notes the parties' litigation of the removal and remand issues was more contentious than in the ordinary course; for example, the parties accused each other of posturing for procedural advantage as to the necessity of FDIC's role in the case and the propriety of removal to this Court. It is in this light that the parties have addressed Defendants' Motion to Amend and again Plaintiff and FDIC accuse Defendants of unnecessary delay and prejudicial

conduct.

In their Motion to Amend, Defendants seek to make numerous changes to the operative Answer filed in Tillamook County Circuit Court on February 15, 2011.  The Court need not address the nonsubstantive, nontechnical proposed amendments.  Instead the Court focuses on Defendants' proposal to remove their Counterclaims and to modify or to remove several of their Affirmative Defenses.  Plaintiff and FDIC contend Defendants seek to make these changes as part of Defendants' ongoing strategy to have FDIC dismissed from this case in order to obtain a remand of this matter to state court.  Indeed, it appears to the Court that many of Defendants' proposed amendments appear to be made in an effort to remove references to Silver Falls Bank that implicate FDIC as receiver of that institution.

As noted, in its assessment of Defendants' Notice of Voluntary Dismissal of FDIC and the Motion to Remand, the Court has already held FDIC is a necessary party in this matter consistent with the same ruling by the Tillamook County Circuit Court, and this Court does not see any justification to revisit that determination.  Thus, the minor changes that Defendants propose to their references to Silver Falls Bank in their Answer are just that-minor and, therefore, are not a basis to deny the Motion to Amend.

Although Defendants' requests for voluntary dismissal of

9 - OPINION AND ORDER

their Counterclaims, their Third Affirmative Defense of Prior
Breach, and their Seventh Affirmative Defense that Plaintiff
violated the Equal Credit Opportunity Act are not in the proper
procedural form, the Court notes they are unopposed, and,
therefore, the Court grants Defendants' Motion to Amend to the
extent that Defendants seek voluntary dismissal of their
Counterclaims and their Third and Seventh Affirmative Defenses.

Plaintiff and FDIC, however, each oppose any amendments to
add new affirmative defenses on the ground that they are futile
due to a jurisdictional bar and are made in bad faith for the
purpose of delay.  With respect to Defendants' proposed
amendments to their Affirmative Defenses, it became apparent at
the hearing on November 21, 2011, that there was some dispute
between the parties about which defenses in Defendants' Proposed
First Amended Answer and Third Amended Affirmative Defenses (*see*
Exhibits 1 and 2 to the Kevin J. Jacoby Declaration (#37)) were
new and which defenses had been previously asserted.
Accordingly, the Court instructed Defendants at the hearing to
file a supplemental statement setting out the new defenses that
Defendants sought to add.  The Court also gave Plaintiff and FDIC
the opportunity to respond to Defendants' supplemental statement.
In their Supplemental Statement, Defendants maintain they seek to
add only one additional Affirmative Defense:  their proposed
Sixth Affirmative Defense of Frustration of Purpose.

10 - OPINION AND ORDER

Having carefully reviewed the operative Answer filed in state court, which contains Defendants' previously-asserted defenses, the Court concludes Defendants are correct.  Despite differing language and factual clarification, Defendants have previously put Plaintiff and FDIC on notice of the substance of each of the Affirmative Defenses included in the proposed amended pleading except the defense of Frustration of Purpose.

## I.   Standards for the Jurisdictional Bar under FIRREA.

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183 (1989), governs claims made against failed financial institutions after FDIC has been appointed as a receiver of the failed bank.  The statute is designed to create a streamlined process for resolving claims against failed banks and, to that end, "grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993).  *See also* 12 U.S.C. § 1821(d).  FIRREA created an administrative process for filing and resolving claims against failed banks through the receiver and requires exhaustion of those administrative remedies before a district court can exercise jurisdiction over those claims.  *See Resolution Trust Corp. v. Midwest Fed. Savings Bank of Minot*, 36 F.3d 785, 790-91 (9th Cir. 1994).  *See also Intercont'l Travel Mktg., Inc. v. Fed. Deposit Ins. Corp.*, 45 F.3d 1278, 1282 (9th Cir. 1994)("No court

11 - OPINION AND ORDER

has jurisdiction over the claim until the exhaustion of this

administrative process.").

Specifically, FIRREA limits judicial review in §

1823(d)(13)(D) as follows:

> Except as otherwise provided in this
> subsection, no court shall have jurisdiction
> over--
>
>> (I) any claim or action for payment
>> from, or any action seeking a
>> determination of rights with respect to,
>> the assets of any depository institution
>> for which the Corporation has been
>> appointed receiver, including assets
>> which the Corporation may acquire from
>> itself as such receiver; or
>>
>> (ii) any claim relating to any act or
>> omission of such institution or the
>> Corporation as receiver.

The meaning and breadth of this statutory language is at the

heart of the dispute between the parties; *i.e.*, whether FIRREA

requires exhaustion of the Affirmative Defenses raised by

Defendants.

The Ninth Circuit held in *Resolution Trust* that the

jurisdictional bar in § 1821(d)(13)(D) of FIRREA bars unexhausted

"claims" and "actions," but § 1821(d) does not operate to bar

jurisdiction over affirmative defenses.  36 F.3d at 791-93.  *See*

*also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. City Sav.,*

*F.S.B.*, 28 F.3d 376, 392-94 (3[d] Cir. 1994)(reaches the same

conclusion based on the legal definitions of "claims" and

"actions," which include counterclaims but no affirmative

12 - OPINION AND ORDER

defenses).   The Ninth Circuit concluded:

> Having reviewed the reasoning behind the
> holdings on both side of the debate, we are
> persuaded that § 1821(d)(13)(D) does not
> divest a district court of jurisdiction over
> an affirmative defense such as mutual
> mistake.   Therefore, we adopt the reasoning
> in *Conner*, and hold that a district court has
> subject matter jurisdiction over affirmative
> defenses raised by a defendant who, prior to
> being sued by the [FDIC], was not a creditor
> of the [FDIC] and who had no independent
> basis for filing a claim against the [FDIC],
> even though the defendant had not exhausted
> the administrative procedures established by
> FIRREA.

*Resolution Trust*, 36 F.3d at 793.

In *McCarthy v. FDIC* the Ninth Circuit subsequently clarified

its opinion in *Resolution Trust* and concluded the jurisdictional

bar applies to claims or actions by creditors and "extends to all

claims and actions against, and actions seeking a determination

of rights with respect to, the assets of failed financial

institutions for which the FDIC serves as a receiver, including

debtors' claims."   348 F.3d 1075, 1079 (9th Cir 2003).   The

*McCarthy* court further concluded, for example, that outside of

the bankruptcy context, the juris- dictional bar would apply to a

breach-of-contract claim by a debtor against a failed bank.   *Id.*

at 1077-79.   Thus, the court in *McCarthy* concluded the FIRREA bar

applied to a debtor's claim for an "offset" against the balance

owed on his loan from the failed bank based on breach of

fiduciary duty because the offset would diminish the bank's

assets. *Id.* at 1079 ("There is no reason why McCarthy's claims may not be processed administratively as effectively as [the claims for unlawful denial of credit by the plaintiff in *Henderson*] were.").

Thus, the question for this Court is whether the jurisdictional bar on breach-of-contract "claims" or "actions" extends to bar an affirmative defense (such as frustration of purpose) that relies on a debtor's allegation of a breach of contract by the receiver or the failed bank as a defense to the debtor's obligation to the receiver or to another owner of the obligation.

In *National Union*, the Third Circuit held:

> Whether an assertion is truly a defense, an affirmative defense, or a counterclaim is a question courts are competent to answer. As discussed [], a claim (or a counterclaim) is essentially an action which asserts a right to payment. Courts should not allow parties to avoid the procedural bar of § 1821(d)(13)(D) by simply labelling what is actually a counterclaim as a defense or an affirmative defense.

28 F.3d at 394. The Ninth Circuit followed a similar line of reasoning in *Resolution Trust* when it resolved the parties' dispute concerning whether the court had jurisdiction over the defendant's "counterclaim" for reformation. 36 F.3d at 791. Distinguishing itself from the courts that have held the jurisdictional bar in FIRREA applies to counterclaims and affirmative defenses, the Ninth Circuit concluded:

14 - OPINION AND ORDER

[W]e note the fact that Orangegate's response
to RTC's complaint was labeled a
"Counterclaim."  We agree, however, with
other courts that § 1821(d)(13)(D) divests
the district courts of jurisdiction over both
claims and counterclaims against the RTC
until the claimants have exhausted the
administrative procedures created by FIRREA.
*See, e.g., RTC v. Mustang Partners*, 946 F.2d
103, 106 (10th Cir. 1991).  Therefore, the
fact that the pleading was labeled a
counterclaim does not avoid the
jurisdictional limitations imposed by FIRREA.

Although Orangegate's response is
labeled as a "counterclaim," we conclude a
better description of the reformation claim
is "affirmative defense."  Here, Orangegate
is attempting to defend itself from personal
liability on the note by asserting the
defense of mutual mistake.  Mutual mistake
consistently has been recognized as an
affirmative defense . . . .  We further note
that Fed. R. Civ. P. 8(c) allows the court to
treat the pleading as an affirmative defense
rather than a counterclaim "if justice so
desires."  We conclude that in this case
justice requires us to treat Orangegate's
"Counterclaim" as an affirmative defense of
mutual mistake.

In many courts, labelling Orangegate's
claim for reformation as an affirmative
defense rather than a counterclaim would not
change the outcome.  These courts have held
§ 1821(d)(13)(D) divests courts of
jurisdiction over both counterclaims and
affirmative defenses asserted in response to
a complaint brought by RTC until the
appropriate administrative remedies are
exhausted.  For example, in *RTC v.
Youngblood*, 807 F. Supp. 765 (N.D. Ga.1 992),
the district court refused to exercise
jurisdiction over the affirmative defenses of
indemnification and set-off:

[T]hese affirmative defenses are in
reality claims against the assets of the

> failed financial institution and
> therefore come under the language of 12
> U.S.C. § 1821(d)(13)(D), which removes
> such claims from the jurisdiction of the
> court until such time as the admini-
> strative claims process has been
> completed.  As the administrative
> process has not been completed, the
> court lacks jurisdiction to hear these
> issues, regardless of whether they are
> couched in terms of counterclaim or
> affirmative defense.

> *Youngblood*, 807 F. Supp. at 770.  *See also
> RTC v. Scaletty*, 810 F. Supp. 1505 (D. Kan.
> 1992); *Talmo v. FDIC*, 782 F. Supp. 1538, 1542
> (S.D. Fla. 1991).

> Other courts, however, have distinguished
> between counterclaims and affirmative
> defenses, and have exercised jurisdiction
> over affirmative defenses even though the
> proper administrative procedures had not yet
> been exhausted.

*Id.* at 791-92.  This reasoning is also consistent with the

Eleventh Circuit's interpretation of FIRREA's jurisdictional bar,

which relied in part on *Resolution Trust*:

> We agree with our sister courts that an
> affirmative defense, that is, "a response to
> a plaintiff's claim which attacks the
> plaintiff's legal right to bring an action,"
> *Black's Law Dictionary* 38 (6th ed. 1991), is
> not subject to the administrative exhaustion
> requirement of Section 1821(d)(13)(D).
> However, a court must look beyond the
> nomenclature of a request for relief to
> ascertain whether it is a true affirmative
> defense or is, in actuality, a claim
> requiring exhaustion as a prerequisite to
> jurisdiction.  Whether a request for relief
> is titled an affirmative defense or a
> counterclaim is not dispositive to the
> question of subject matter jurisdiction.  The

16 - OPINION AND ORDER

> germane question is whether the remedy sought
> by a party, regardless of its label, is
> encompassed by Section 1821(d)(13)(D), that
> is, whether the assertion is in reality a
> claim against the assets or actions of the
> failed institution or the RTC as receiver.

*American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir. 1999)(the defendant's counterclaim for an offset against the receiver's claim for money owed on a promissory note for failure to fund a portion of the loan from the failed bank was subject to § 1821(d)(13)(D) and was barred for failure to exhaust).

**II. Analysis**.

As noted, Plaintiff and FDIC contend Defendants should not be able to amend their Answer to add new affirmative defenses that are futile or are made in bad faith for the purpose of delay.  The Court notes Plaintiff and FDIC urge the Court to apply the FIRREA jurisdictional analysis to each of Defendants' Affirmative Defenses, including those that pre-existed FDIC's removal.  For purposes of this Motion, however, the Court will only assess the proposed new Affirmative Defense of Frustration of Purpose under Rule 15(a) amendment standards.

**A.   Futility.**

**1.   Defendants' proposed amendment is not futile to the extent Defendants seek only to allege "frustration of purpose" as a bar to Plaintiff's right to recover.**

Defendants propose to amend their Affirmative Defenses

to add the defense of Frustration of Purpose based on Defendants'
allegations that Silver Falls Bank breached and repudiated the
modified terms of the loan despite Defendants' full performance
of the loan terms.   Thus, Defendants assert even if they breached
the loan agreement, the conduct of Silver Falls Bank so
frustrated the purposes of the loan (construction of a condo
development) that it excuses nonperformance by Defendants.

Plaintiff and FDIC contend the Court should not permit
Defendants to amend their Affirmative Defenses because any such
amendment is futile.   Plaintiff and FDIC argue Defendants have
merely proposed removing their Counterclaims (which Defendants
apparently concede are barred by FIRREA for failure to exhaust)
and renaming them as "affirmative defenses."   Thus, Plaintiff
and FDIC contend the Court should look past the designation
"Affirmative Defense" and conclude it is really a "claim" that is
subject to the exhaustion requirements under FIRREA and,
therefore, beyond the jurisdiction of this Court.

Plaintiff and FDIC repeatedly seize on the fact that
Defendants rely on similar or identical facts for their
Counterclaims and Affirmative Defenses.   That fact, however, does
not determine whether an element of a responsive pleading
constitutes a counterclaim or an affirmative defense.   Courts
routinely consider whether a defendant seeks affirmative relief
against FDIC or a failed bank in the form of monetary relief or

18 - OPINION AND ORDER

seeks to offer a defense to the asserted liability. *See, e.g.*, *McCarthy,* 348 F.3d at 1079 (damages sought by way of offset constituted a "claim" subject to the FIRREA exhaustion requirements); *Am. First Fed.*, 198 F.3d at 1264-65 (damage claim based on bank's refusal to fully fund the construction loan at issue subject to FIRREA's exhaustion requirements); *National Union*, 28 F.3d at 386-95 (rescission is an affirmative defense and "a claim (or a counterclaim) is essentially an action which asserts a right to payment."); *Rundgren v. Wash. Mut. Bank, F.A.*, No. 09-00495 JMS/KSC, 2010 WL 4960513, at *5-6 (D. Haw. Nov. 30 2010)(although the defendant's claim for damages against the failed bank are subject to FIRREA's exhaustion requirements, the defendant's affirmative defense of rescission was not and "[c]laims seeking payment from the assets of a failed institution and/or seeking determination of rights to those assets are clearly not affirmative defenses, but rather claims subject to FIRREA's administrative process.").

Several district courts have concluded on the basis of the foregoing analysis that affirmative defenses to foreclosure actions based on contract theories are not subject to FIRREA's exhaustion requirements. *See, e.g., Bolduc v. Beal Bank, SSB*, 994 F. Supp. 82, 87-92 (D. N.H. Feb. 3, 1998)(concludes based in part on *Resolution Trust* that the plaintiff's declaratory action asserting undue influence and failure of consideration as

19 - OPINION AND ORDER

defenses to foreclosure were not subject to FIRREA's
administrative process because these defenses constitute
affirmative defenses); *FDIC v. Modular Homes, Inc.*, 859 F. Supp.
117, 121-24 (D. N.J. Aug. 1, 1994)(concludes based in part on
*National Union* that the defendant's claim for a monetary set-off
is subject to FIRREA's exhaustion requirement but the affirmative
defenses such as failure to state a claim, promissory estoppel,
accord and satisfaction, undue influence, unjust enrichment,
failure to comply with a condition of a contract, breach of
contract and misrepresentation are not).

    With this analysis in mind, the Court concludes
Defendants' proposal to add to their Answer the Affirmative
Defense of Frustration of Purpose is not futile for pleading
purposes to the extent that Defendants do not seek damages or
affirmative relief but merely allege the defense as a bar to the
liability that Plaintiff seeks to establish.

> **2.  Defendants' proposed amendment is not futile for
> failure to allege any contract modification was
> not in writing.**

    Plaintiff also specifically challenges Defendants'
proposed Third, Fifth, and Sixth Affirmative Defenses (which
include Frustration of Purpose) as futile on the ground that
Defendants assert breaches of a modification to the loan terms
without alleging that modification was made in writing or
executed by Silver Falls Bank.  Plaintiff cites § 1823(e) of

20 - OPINION AND ORDER

FIRREA, which provides:

> No agreement which tends to diminish or
> defeat the interest of the Corporation in any
> asset acquired by it under this section or
> section 1821 of this title, either as
> security for a loan or by purchase or as
> receiver of any insured depository
> institution, shall be valid against the
> Corporation unless such agreement-
>
>> (A) is in writing,
>>
>> (B) was executed by the depository
>> institution and any person claiming an
>> adverse interest thereunder, including
>> the obligor, contemporaneously with the
>> acquisition of the asset by the
>> depository institution,
>>
>> © was approved by the board of directors
>> of the depository institution or its
>> loan committee, which approval shall be
>> reflected in the minutes of said board
>> or committee, and
>>
>> (D) has been, continuously, from the
>> time of its execution, an official
>> record of the depository institution.

12 U.S.C. § 1823(e)(1).  Section 1823(e)(2), however, provides

for exceptions to the writing requirement that none of the

parties has addressed.  In addition, none of the parties has

discussed the scope of § 1823(e) in the context of FIRREA, and

Defendants have not yet had an opportunity to respond to this

particular argument in writing.

Although Defendants' assertions concerning the alleged

modification do not include an allegation that there is a written

modification agreement, Defendants make specific allegations

about the timing and details of the alleged modification.  The
Court cannot conclude on this record that Defendants' proposed
amendments concerning the alleged modification of the loan terms
are conclusively futile.  As with the other Affirmative Defenses,
these defenses may be challenged by Plaintiff and FDIC in a
substantive motion or at trial.

**B.   Bad Faith and Delay.**

As noted, this Court has not presided over the early stages
of this litigation in state court, and, therefore, it is
difficult for the Court to assess the arguments concerning delay
and bad faith made by Plaintiffs and FDIC.  Nevertheless, the
Court notes Defendants appear to have responded to FDIC's
arguments concerning FIRREA's administrative process and
jurisdictional bar by conceding their unexhausted Counterclaims
and by adjusting their Affirmative Defenses accordingly.
Moreover, because the bulk of Defendants' proposed amendments
appear to have been alleged previously, the Court does not see
any basis to conclude Plaintiff and FDIC have been prejudiced.
The Court also does not find any evidence of bad faith or delay
by Defendants.

Accordingly, in the exercise of the Court's discretion and
in light of the policy supporting liberal application of Rule
15(a), the Court grants Defendants' Motion to Amend in its
entirety.  As noted, the Court expects Plaintiff and FDIC to move

against Defendants' Affirmative Defenses in a substantive motion
or at trial, at which point the Court may address the
jurisdictional and substantive issues in a dispositive fashion on
a fully developed record.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#35)
for Leave to File First Amended Answer and Third Amended
Affirmative Defenses.  Defendants shall file the final version of
their First Amended Answer and Third Amended Affirmative Defenses
in a form consistent with this Opinion and Order no later than
**March 16, 2012**, and any pleadings responsive to Defendants'
amended pleading must be filed no later than **March 26, 2012.**

In order to manage further proceedings, the Court will be
scheduling a Rule 16 Conference in due course.  No motions may be
filed before the Rule 16 Conference.  To assist the Court in
setting a reasonable case-management schedule, the parties shall
submit no later than **April 6, 2012,** their jointly proposed
schedule taking the following into account:

The Court directs trial counsel for all parties to confer
meaningfully[1] regarding the legal standards the Court has found

---

[1]In this instance, meaningful conferral must be in real
time, not by email or other correspondence, and at least by
telephone conference if not in person.

23 - OPINION AND ORDER

applicable to this matter and a reasonable schedule to complete
discovery and for the filing of any dispositive motions before
trial.  With respect to future consideration of the issues
discussed in this Opinion and Order, the parties shall apply the
legal standards set out herein.  To the extent future arguments
of the parties depend on rulings made in state court, the parties
shall submit a sufficient record from which the state-court
analysis can be determined.

IT IS SO ORDERED.

DATED this 8th day of March, 2012.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge