IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MULTIBANK 2009-1 RES-ADC VENTURE,            3:11-CV-853-BR
LLC, a Delaware Limited Liability
Company,                                     OPINION AND ORDER

   Plaintiff,

v.

PINECREST AT NESKOWIN, LLC; MICHAEL
D. FREEMAN; MELANIE S. FREEMAN; and
UNIT OWNERS ASSOCIATION OF PINECREST,

   Defendants.
_____

PINECREST AT NESKOWIN, LLC; MICHAEL
D. FREEMAN; MELANIE S. FREEMAN; and
UNIT OWNERS ASSOCIATION OF PINECREST,

   Counterclaimants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for SILVER FALLS BANK,

   Counterclaim Defendant/
   Third-Party Defendant.

**DANIEL STEINBERG**
Green & Markley P.C.
1515 Fifth Ave., Suite 600
Portland, OR 97201
(503) 295-2668

**MICHAEL A. GEHRET**
Snell & Wilmer, L.L.P.
15 West South Temple, Ste. 1200
Salt Lake City, UT 84101
(801) 257-1900

       Attorneys for Plaintiff Multibank
       2009-1 Res-ADC Venture, LLC

**KEVIN J. JACOBY**
**PAUL R. J. CONNOLLY**
Law Office of Paul R. J. Connolly
P.O. Box 3095
Salem, OR 97302
(503) 585-2054

       Attorneys for Defendants/Counter-
       claimants Pinecrest at Neskowin, LLC;
       Michael D. Freeman; Melanie S. Freeman;
       and Unit Owners Association of Pinecrest

**JOEL P. LEONARD**
**JOHN D. OSTRANDER**
**WILLIAM A. DREW**
Elliott Ostrander & Preston, P.C.
Union Bank of California Tower
707 S.W. Washington Street, Ste. 1500
Portland, OR 97205
(503) 224-7112

       Attorneys for Counterclaim Defendant/
       Third-Party Defendant Federal Deposit Insurance
       Corporation

**BROWN, Judge.**

    This matter comes before the Court on the following Motions:

    1.  Motion (#84) for Partial Summary Judgment filed by

2 - OPINION AND ORDER

Counterclaim Defendant Federal Deposit Insurance Corporation
(FDIC) as Receiver for Silver Falls Bank and joined (#88) by
Plaintiff Multibank 2009-1 RES-ADC Venture, LLC;

2.  Motion (#89) for Summary Judgment filed by Multibank and
joined (#84) by FDIC; and

3.  Motion (#92) for Summary Judgment filed by Defendants/
Counterclaimants Pinecrest at Neskowin, LLC; Michael D. Freeman;
Melanie Freeman; and Unit Owners Association of Pinecrest.

For the reasons that follow, the Court **GRANTS** FDIC's Motion
for Partial Summary Judgment joined by Multibank, **GRANTS**
Multibank's Motion for Summary Judgment joined by FDIC, and
**DENIES** Defendants' Motion for Partial Summary Judgment.


## AGREED FACTS

The parties agree to the following facts taken from Section
III of the their Proposed Pretrial Order that has not yet been
approved by the Court:

Michael and Melanie Freeman bought property on the Oregon
Coast to develop condominiums and formed Pinecrest for that
purpose.

In October 2006 Silver Falls Bank loaned Pinecrest $2.5
million under a Promissory Note secured by a Trust Deed and by
personal guarantees of Defendants' loan obligations to Silver
Falls Bank.

3  - OPINION AND ORDER

Between October 2006 and July 2008 Silver Falls Bank advanced approximately $2.4 million to Defendants to refinance existing debt on the condominium project.

In November 2007 the terms of the Promissory Note were amended to provide for a maturity date of October 18, 2008.

In February 2009 Silver Falls Bank was closed by the Oregon Department of Business Consumer Services, and FDIC was named receiver of Silver Falls Bank.


## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, No. 09-36109, 2011 WL 723101, at *8 (9th Cir. Mar. 3, 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*. "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627

4  - OPINION AND ORDER

F.3d 376, 387 (9th Cir. 2010)(citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1987)). *See also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge*

*Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).  The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


## **DISCUSSION**

"Federal law governs the interpretation of contracts entered pursuant to federal law where the [FDIC] is a party." *GECCMC 2005-C1 Plummer Street Office Ltd. P'ship v. J.P. Morgan Chase Bank, Nat'l Assoc.,* 671 F.3d 1027, 1032 (9th Cir. 2012).  "[The Federal Institutions Reform and Recovery Act (FIRREA)] implicates uniquely federal concerns in that it governs resolution of the affairs of failed banks." 12 U.S.C. § 1821, *et seq.*  Because there is not any federal common-law standard of care applicable to actions taken by the FDIC, the application of state-law standards does not conflict with any federal policy or interest. *Atherton v. FDIC,* 519 U.S. 213, 224-26 (1997).

Accordingly, the Court applies federal law when deciding specific issues relating to FIRREA and applies Oregon common law in addressing the affirmative defenses asserted by Defendants.

**FDIC'S MOTION (#84) FOR PARTIAL SUMMARY JUDGMENT**
**MULTIBANK JOINDER (#88)**

FDIC, joined by Multibank, argues there are not any genuine disputes of material fact as to Defendants' Second Affirmative Defense (Repudiation of Modified Loan Agreement), Third Affirmative Defense (Breach of Original Loan Agreement -Failure to Fund), Fifth Affirmative Defense (Frustration of Purpose), Sixth Affirmative Defense (Failure to Mitigate),[1] and Seventh Affirmative Defense (Material Change in Risk).  FDIC and Multibank assert the Court, therefore, should grant summary judgment to FDIC and Multibank as to these Affirmative Defenses of Defendants.  According to Defendants, however, genuine disputes of material fact exist as to each of these Affirmative Defenses that preclude summary judgment in favor of FDIC and Multibank.

**I.   Second Affirmative Defense (Repudiation of Modified Loan Agreement).**

Defendants assert days before Silver Falls Bank closed its doors, Defendants negotiated a Changes in Terms Agreement (CITA) with Silver Falls Bank in which the bank granted Defendants a two-month loan extension.  Although the CITA was never signed, Silver Falls Bank representatives signed a document "approv[ing] Defendant's offer to enter into the CITA," and Defendants argue

---

[1] At oral argument Defendants withdrew their Sixth Affirmative Defense based on Failure to Mitigate.

all of the CITA terms were set forth in that approval document.
According to Defendants, FDIC refuses to honor the approved-but-unsigned CITA despite Defendants' submission of evidence from former Silver Falls Bank officials that the CITA provided substantial value to Silver Falls Bank and was in the bank's best interests.  In any event, Defendants argue the only reason Silver Falls Bank did not sign the CITA was because the bank closed and was taken over by FDIC.  Defendants argue these circumstances create a genuine dispute of material fact as to whether the CITA is enforceable against FDIC.

FDIC contends the CITA is not enforceable because it does not comply with the requirements of FIRREA in light of the fact that (1) the CITA was never executed and (2) the CITA is not enforceable against FDIC under FIRREA even if it was enforceable against Silver Falls Bank.

12 U.S.C. § 1823(e) of FIRREA provides:

> (e) Agreements against interests of
> Corporation
>
> (1) In general
> *No agreement which tends to diminish or*
> *defeat the interest of the [Federal Deposit*
> *Insurance] Corporation in any asset acquired*
> *by it* under this section or section 1821 of
> this title, either as security for a loan or
> by purchase or as receiver of any insured
> depository institution, *shall be valid*
> *against the Corporation unless such*
> *agreement–*
>
> (A) *is in writing*,

(B) *was executed* by the depository
institution and any person claiming an
adverse interest thereunder, *including the
obligor*, *contemporaneously with the
acquisition of the asset by the depository
institution,*

(C) was approved by the board of directors of
the depository institution or its loan
committee, which approval shall be reflected
in the minutes of said board or committee,
and

(D) has been, continuously, from the time of
its execution, an official record of the
depository institution.

Emphasis added.

### A.  **Lack of a Binding Contract.**

FDIC argues there was not any binding contract created
between Defendants and Silver Falls Bank for a loan extension
under the CITA because under the terms of a Limited Liability
Company Resolution signed by Defendants Michael and Melanie
Freeman such an agreement would have had to be in writing,
subject to the terms of the original loan agreement, and signed
by the Freemans in order to bind Defendant Pinecrest.  Thus, the
alleged oral agreement between the parties is not enforceable or
sufficient to bind Pinecrest.  In any event, FDIC asserts
Defendants did not make the $20,000 payment that was a condition
precedent to any loan extension.

For the reasons that follow, however, the Court concludes it
need not reach the issue as to whether a binding contract was

executed between Silver Falls Bank and Defendants because such a contract is not enforceable against FDIC under FIRREA.  *See* 12 U.S.C. § 1823(e).

**B.    Unenforceability of the CITA against FDIC under FIRREA.**

Although FDIC acknowledges the state court, before removal to this Court, denied Multibank's motion for summary judgment as to their position that the CITA was unenforceable against Multibank, FDIC, nevertheless, contends the state-court ruling is not the law of the case because FDIC was not a party to the state-court proceeding and is not bound by it.  In any event, FDIC asserts the state-court judge erred in concluding the Silver Falls Bank loan to Pinecrest was a liability of the Silver Falls Bank rather than an asset.

As noted, FIRREA Section 1823(e) addresses assets of a bank rather than liabilities.  *See E.I. Du Pont de Mours Co. V. FDIC,* 32 F.3d 592, 597 (D.C. Cir. 1994)("[M]ost courts have read the statute as applicable only to cases involving a *specific asset, usually a loan*, which in the ordinary course of business would be recorded and approved by the bank's loan committee or board of directors."  Emphasis added.)).  Thus, this Court concludes when Silver Falls Bank was closed, the unsigned CITA, the Freemans' guarantees that accompanied the proposed CITA, the Promissory Note, and the Trust Deed were potential "assets" of Silver Falls

Bank that secured the approximately $2.5 million loan to Pinecrest.

Although Defendants concede the CITA is an asset of FDIC, Defendants argue under *Resolution Trust Corp. v. Midwest Fed. Savings Bank of Minot* the "contemporaneousness requirement" of § 1823(e)(1)(B) might be applied less strictly if it "defeat[ed] a valid accord and satisfaction." *See* 4 F.3d 1490, 1501 (9th Cir. 1993). The Court, however, agrees with FDIC that the agreement would have led to an extension of the maturity date on the loan, which, in turn, would have lowered the loan's rate of return, diminished the interest that FDIC would have received, and thereby resulted in a violation of Section 1823(e). Accordingly, FDIC and Multibank are entitled to summary judgment as to this issue.

In summary, the Court **GRANTS** the Motion for Partial Summary Judgment of FDIC and Multibank as to Defendants' Second Affirmative Defense on the ground that the CITA is not enforceable against FDIC under FIRREA, 12 U.S.C. § 1823(e).

II. <u>**Third Affirmative Defense (Breach of Original Loan Agreement - Failure to Fund).**</u>

Defendants assert Silver Falls Bank breached the loan documents in August 2008 by not funding Defendants' draw request in the amount of $42,225. According to the FDIC, however, the draw request was denied because although 85% of the construction

11 - OPINION AND ORDER

budget had already been disbursed, only 79% of the construction
had been completed. FDIC points to the fact that Silver Falls
Bank informed Defendants the construction needed to catch up to
the draws already paid before a further draw would be allowed.
FDIC also relies on the Loan Agreement's "Condition Precedent to
Each Advance" requirement as to "Satisfactory Construction" that

> [a]ll work usually done at the stage of
> construction for which disbursement is
> requested *shall have been done in a good and
> workmanlike manner and all materials and
> fixtures usually furnished and installed at
> this stage of construction shall have been
> furnished and installed*, all in compliance
> with the Plans and Specifications.

FDIC Mot. for Partial Summary J., Ex. 12 (emphasis added).
Accordingly, FDIC asserts there is not any genuine dispute of
material fact that Defendants failed to satisfy the conditions
precedent to being entitled to an advance under the Loan
Agreement.

Although Defendants contend Silver Falls Bank did not
provide a good reason for denying Defendants' funding, Defendants
conceded at oral argument that if their draw request had been
granted at the time, the total amount funded at that point would
have been 91% of the loan even though Defendants estimate that
only 85% of the project had been completed. Nevertheless,
Defendants maintain the extent to which the project had been
completed compared to the amount of the loan already drawn shows
that Defendants had substantially performed the contract and had

12 - OPINION AND ORDER

not materially breached any loan conditions.

In response, FDIC emphasizes there is not any genuine dispute of material fact as to Defendants' failure to present sufficient proof to Silver Falls Bank that the progress of the construction project was adequate to justify a further draw on the loan.

On this record the Court agrees with FDIC that there is not a genuine dispute of material fact that Silver Falls Bank was not required to provide further loan funds because the amount of the loan already paid materially exceeded the extent to which the project had been completed and, therefore, Defendants did not satisfy a condition precedent for their draw request.

Accordingly, the Court **GRANTS** the Motion for Partial Summary Judgment of FDIC and Multibank as to Defendants' Third Affirmative Defense (Breach of Original Loan Agreement - Failure to Fund).

## III. __Fifth Affirmative Defense (Frustration of Purpose)__.

Defendants assert FDIC's failure to fund the completion of the project, coupled with the turmoil following the demise of Silver Falls Bank, gives rise to a frustration-of-purpose defense and excuses Defendants' obligation to repay FDIC the amounts borrowed by Defendants.  On the other hand, FDIC contends a frustration-of-purpose defense to a breach-of-contract claim is

valid only if the event or action giving rise to the breach was
beyond the control of the parties.  *See Restatement (Second) of
Contracts*, § 261, comment d:  "Events that come within the rule
stated in this Section are generally due either to 'acts of god'
or 'acts of third parties.'"

"[T]he frustration of purpose doctrine allows rescission of
a contract if a party's mutually understood 'principal purpose'
in entering into the contract is 'frustrated . . . by the
occurrence of an event the non-occurrence of which was a basic
assumption' of the parties." *Chang v. Pacificorp*, 212 Or. App.
14, 22 (2007)(quoting Restatement (Second) of Contracts § 265
(1981)).  Rescission for frustration of purpose requires a
showing that "(1) a particular purpose was [the] 'primary
purpose' in entering into a contract; (2) that purpose was
'mutually understood' even if not mutually shared; (3) that
purpose was substantially 'frustrated'; and (4) the 'frustration'
was the result of circumstances that the parties mutually assumed
would not occur - and, thus, the risk of the frustrating
circumstance was not impliedly allocated to the party who later
seeks rescission." *Id.*

Here FDIC contends the failure of Silver Falls Bank did not
cause Defendants to default on their loan obligations, and, in
fact, Defendants' difficulties arose from their own making.
Defendants, however, maintain the bank crisis that coincided with

14 - OPINION AND ORDER

the failure of Silver Falls Bank frustrated Defendants' purposes in obtaining refinancing.

The Court agrees with FDIC that there is not any genuine dispute of material fact that it was Defendants' failure to complete construction within the loan-agreement parameters that led to FDIC's decision not to further fund the loan issued to Defendants by Silver Falls Bank.  The Court concludes the nationwide banking crisis is irrelevant to Defendants' Fifth Affirmative Defense.

Accordingly, the Court **GRANTS** the Motion for Partial Summary Judgment of FDIC and Multibank as to Defendants' Fifth Affirmative Defense (Frustration of Purpose).

## IV.   **Seventh Affirmative Defense (Material Changes in Risk).**

Defendants contend the failure of Silver Falls Bank, FDIC's repudiation of the original loan documents, and FDIC's assignment of the loan to Multibank materially increased Defendants' risk. Defendants, therefore, contend the personal guarantees made by the Freemans are no longer valid. *See Marc Nelson Oil Prod., Inc. v. Grim Logging Co., Inc.,* 199 Or. App. 73, 84 (2005) (assignment of a risk that "materially increase[s] defendant's risk as guarantor . . . operate[s] to discharge defendant as a matter of law.").  Defendants also contend their risk was materially increased by the assignment of their loan from FDIC to Multibank because Multibank made it clear that it would not

15 - OPINION AND ORDER

negotiate the amount of the indebtedness, sought a greater
principal and interest payment than was justified, and did not
have an interest in Defendants completing their construction
project.

In *Marc Nelson* the Oregon Court of Appeals held "[w]hether
the guarantor's risk is materially increased by a particular
modification ultimately will turn on the particular facts of
each case." *Id.* The court noted although an "assignment [that]
changed the principle parties to the contract [was] undeniably
material," but such a risk "would not have *increased defendant's
risk* on the contract if defendant had been aware of the change."
*Id.* Relying on *Marc Nelson,* FDIC asserts its assignment of
Defendants' loan to Multibank did not alter the terms of the loan
or Defendants' obligations under loan.

On this record, including oral argument, the Court concludes
there is not any basis to find that a genuine dispute of material
fact exists as to whether there was a material change in the
terms of the loan, the amount of the loan, or the enforcement
provisions as a result of FDIC's assignment of the loan as a
result of FDIC's assignment of the loan to Plaintiff Multibank.

Accordingly, the Court **GRANTS** the Motion for Partial Summary
Judgment of FDIC and Multibank as to Defendants' Seventh
Affirmative Defense (Material Changes in Risk).

## **PLAINTIFF MULTIBANK'S MOTION (#89) FOR SUMMARY JUDGMENT FDIC JOINED (#84)**

Multibank, joined by FDIC, asserts it is entitled to summary judgment as a matter of law as to Defendant Pinecrest's Fourth Affirmative Defense (Unclean Hands) because that defense is not available to a party whose property is foreclosed unless the acts giving rise to that defense directly caused the party's default that led to the foreclosure proceeding.  The Court notes in the Proposed Pretrial Order that Defendants describe their unclean-hands defense as based on Multibank's "course of dealings" with Defendants and Multibank's alleged "repudiation of the February 18, 2009, modification agreement."  Moreover, Pinecrest contends "it is well settled in Oregon that the doctrine of unclean hands applies to judicial foreclosure suits."  The three cases cited by Pinecrest to support that proposition, however, are not directly on point.

*First State Bank v. Hoehnke Nursery Co.,* 63 Or. App. 816 (1983), involves consolidated foreclosure actions.  The court reversed the trial court's opinion that a bank foreclosure was invalid based on "unclean hands."  The case involved a purported conflict of interest arising from the fact that two of the bank's officers had previously served on the board of the defendant nursery.  *Id.* at 821.  "The nursery was in default, and [the bank] did not breach any duty by acting on that default."  *Id.* at

17 - OPINION AND ORDER

821-22.  The court held "the doctrine of unclean hands [did not] preclude entry of the decree of foreclosure sought by [the bank]."  *Id.*

In *First State Bank v. Meadow Lake Stables,* 55 Or. App. 917, 920 (1982), the court stated in *dicta* that the right to invoke the equitable doctrine of inverse order of alienation belonged only "to the earlier or earliest *grantee* of the mortgage, who may use it only to protect himself."  Emphasis added.  The court, however, made clear in a footnote that the doctrine does not apply to "a grantor-debtor, who has caused foreclosure of the paramount mortgage for failure to pay" because that party "has unclean hand as to the grantees."  *Id.,* n.2.

In *Phair v. Walker*, 48 Or. App. 641, 643 (1980), the estate of a property seller gave the purchaser notice that it would declare the entire balance on a land-sale contract due and owing if another payment was late.  The court held the estate was precluded from doing so if it thereafter accepted several late payments before taking action to declare the entire balance due. The issue was whether the acceptance of late payments precluded foreclosure solely based on another late payment rather than whether the matter involved unclean hands.  *Id.* at 646.

The Court has not found any Oregon case, and Defendants have cited none, in which the court found unclean hands by

a foreclosing entity precluded a foreclosure when the borrower
was in default in its loan payments and the default in the
loan payments was not caused by any action taken by the lender.
*Compare*, however, *Patriot Nat'l Bank Bobbi, Inc.,* Case No.
FSTCV085009026S, 2009 WL 1958956, at *4-5 (Conn. Super. Ct.,
June 29, 2009)(The court held a fraud by the foreclosing entity
that creates the ability to foreclose,(*i.e.,* "but for the
[Plaintiff Bank's fraud, the foreclosure action would have been
precluded") would be a defense to a subsequent foreclosure
proceeding).

As already established, Defendants have not presented
evidence that Multibank engaged in any conduct that caused
Defendants to default on their loan obligations.

Accordingly, on this record the Court **GRANTS** the Motion
(#89) of Multibank and FDIC for Summary Judgment as to
Defendants' Fourth Affirmative Defense based on unclean hands.

## **DEFENDANTS' MOTION (#92) FOR SUMMARY JUDGMENT**

Defendants contend New York law applies and, therefore,
Defendants are entitled to summary judgment that FDIC rather than
Multibank is the real party-in-interest under New York law and is
the only party entitled to bring this action.  In support of
their position that New York law applies, Defendants rely on the

February 9, 2010, Loan Contribution and Sales Agreement between
FDIC and Multibank, which provides the Agreement between FDIC and
Multibank "shall be governed by and construed in accordance with
federal law, but if federal law does not provide a rule of
decision, it shall be governed and construed in accordance with
the law of the State of New York."

Defendants argue there is not any federal law, including
FIRREA, that is directly on point and there is not any
"significant conflict between any federal policy or interest" and
New York state law.  Defendants further argue FDIC, under New
York common law, must have been "divested of all control" over
the Agreement by its transfer of its rights to Multibank before
the Agreement could confer real party-in-interest status on
Multibank.  The Agreement, however, did not divest FDIC "of all
control over the thing assigned."  *See Miller v. Wells Fargo Bank
Int'l Corp.,* 540 F2d 548, 558 (2d Cir. 1976):

> [T]o effect an assignment it is necessary
> "that there be a perfected transaction
> between the parties, intended to vest in the
> assignee a present right in the things
> assigned."  *See Coastal Commercial Corp. v.
> Samuel Kosoff & Sons, Inc*., 10 App. Div.2d
> 372, 376, 199 N.Y.S.2d 852, 855 (4th Dep't
> 1960).  *An assignment at law contemplates "a
> completed transfer of the entire interest of
> the assignor in the particular subject of
> assignment, whereby the assignor is divested
> of all control over the thing assigned."  Id.*

Emphasis added.

20 - OPINION AND ORDER

Accordingly, Defendants contend Multibank is not the real party-in-interest for purposes of bringing this case against Defendants in the absence of a valid assignment of FDIC's entire interest to Multibank in the Agreement.  To further support their contention, Defendants point out that in the related proceeding in Tillamook County Circuit Court, FDIC continued to claim an interest in the subject matter of this case and thereby confirmed it had not validly assigned its entire interest to Multibank in the Agreement.

FDIC, in turn, asserts the assignment of its interest to Multibank is governed by FIRREA, which specifically permits FDIC to assign its interest to Multibank in the Agreement.  *See* 12 U.S.C. § 1821 (d)(2)(G)(1)(ii)(FDIC may "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer).").  *See also Sahni v. Am. Diversified Partners,* 83 F.3d 1054, 1059 (9th Cir. 1996).  Accordingly, FDIC asserts under Federal Rule of Civil Procedure 17(a) it no longer is a real party-in-interest in this proceeding as to the specific assets that it transferred to Multibank regardless of the fact that FDIC has retained certain other "excluded liabilities" that FDIC did not transfer to Multibank.  Moreover, contrary to Defendants'

argument, FDIC's retention of certain other liabilities is expressly permitted under FIRREA.  *See* 12 U.S.C. § 1821 (d)(2)(G)("The FDIC's receivership powers under FIRREA include the ability to transfer *or retain* any liability of the failed bank as well as to disaffirm or repudiate any lease that the FDIC determines is burdensome."  Emphasis added.).  *See also GECCMC 2005-C1 Plummer Street Office P'ship v. J.P. Morgan Chase Bank, Nat'l Ass'n,* 671 F.3d 1027, 1035 (9th Cir. 2012)("FIRREA's statutory scheme thus contemplates the FDIC's sweeping authority to manage the affairs of a failed bank to further the purpose of expeditious resolution of the failed bank's affairs.").

The Court agrees with FDIC that FIRREA rather than New York state law governs FDIC's authority to assign to Multibank its right to collect amounts owing on Defendants' loan.  FDIC complied with FIRREA and, therefore, Plaintiff Multibank is the real party-in-interest in this action.

Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment.


## CONCLUSION

For these reasons**,** the Court **GRANTS** FDIC's Motion (#84) for Partial Summary Judgment joined by Multibank (#88), **GRANTS** Plaintiff Multibank's Motion (#89) for Summary Judgment joined

by FDIC (#84), and **DENIES** Defendants' Motion (#92) for Summary

Judgment.

IT IS SO ORDERED.

DATED this 10th day of April, 2013.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

23 - OPINION AND ORDER